## MIEHLE *v.* READ.

PATENTS; BURDEN OF PROOF; DILIGENCE; AMENDMENT.

1. The party to an interference who was first to file his application is to be regarded as the senior applicant, although while it was pending his rival's application went to patent.

2. Where it is shown that one of the parties to an interference conceived the invention in June, but did nothing until after his rival entered the field and filed an application in the following December, his only excuse being that he was engaged in other things which required his attention, while a two hours' conference with his attorney would have sufficed to have prepared his application for filing, and it also appears that he had had experience in patent matters and was not without means to prosecute his invention, such lack of diligence is shown as to defeat his claim to priority in an interference proceeding.

3. The rights of a party to an interference become fixed by the filing of his application in the Patent Office, and lack of diligence on his part in prosecuting his application in the Office has no bearing upon the question of priority.

4. Where one of the parties to an interference appears to have so changed his claims as to cover an invention which he did not contemplate until after he saw his rival's patent, *quære,* whether (in view of Bechman v. Wood, 15 App. D. C. 484) he is entitled to make the claims in issue.

No. 158 Patent Appeals. Submitted March 13, 1901. Decided April 2, 1901.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Messrs. Elliott & Hopkins, A. E. Dowell* and *J. J. Darlington* for the appellant.

*Messrs. Philipp, Sawyer, Rice & Kennedy* for the appellee.

Mr. Justice Morris delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents in an interference case.

As stated in the appellant's specification, the invention here in controversy " relates to that class of mechanical movements employed for transforming a rotary movement with rectilinear or reciprocating movement " with special reference to the use of such motion in the beds of printing-presses. The object of the invention is " to convert the rotary movement of a driving-shaft into rectilinear or reciprocating movement in the type-bed or part to be reciprocated, and in doing so to carry the bed back and forth throughout the greater part of its travel with a uniform movement and as the bed approaches the limit of its traverse in either direction to decrease the motion gradually until it is absolutely arrested, and then start the bed on its return movement and increase as gradually the motion from a point of rest to the full maximum speed."

The claims in issue are nine in number, not greatly different from each other, and all of the same general character; and they are as follows:

" 1. The combination with the part to be reciprocated and means for reciprocating said part throughout the greater part of its movement, of a bodily revolving lever also rotating on an independent axis in the opposite direction of its bodily travel, and means in connection with said part to be reciprocated for engagement with said lever.

" 2. The combination with the part to be reciprocated and means for reciprocating said part throughout the greater portion of its movement, of a bodily revolving lever also rotating on an independent axis in the opposite direction of its bodily travel, and means at each end of said part to be reciprocated for engagement with said lever.

" 3. The combination with the part to be reciprocated and means for reciprocating said part throughout the greater portion of its movement, of a bodily revoluble lever rotatable on an independent axis and comprising a toothed portion

9

forming a pinion, a second toothed portion engaging with said pinion and causing the same to rotate, and means in connection with said part to be reciprocated for engaging with said lever.

" 4. The combination with the part to be reciprocated and means for reciprocating said part throughout the greater portion of its movement, of a bodily revoluble lever rotatable on an independent axis and comprising a pinion, a nonrotative toothed portion engaging with said pinion and causing the latter to rotate, and means in connection with said part to be reciprocated for engagement with said lever.

" 5. The combination with the part to be reciprocated and means for reciprocating said part throughout the greater portion of its movement, of a bodily revoluble lever, rotatable on an independent axis and comprising a pinion, an internal gear surrounding said pinion and meshing therewith, whereby said lever is rotated in the opposite direction of its bodily travel, and means in connection with said part to be reciprocated for engagement with said lever.

" 6. The combination with the part to be reciprocated and means for reciprocating said part throughout the greater portion of its movement, of a bodily revoluble lever rotatable on an independent axis and comprising a pinion, an internal nonrotative gear surrounding said pinion and causing said lever to rotate, and means in connection with said part to be reciprocated for engagement with said lever.

" 7. The combination with the part to be reciprocated and means for reciprocating said part throughout the greater portion of its movement, of a rotating member, a lever pivoted eccentrically to be carried by said member, a nonrotative gear, said lever comprising a pinion engaging with said gear and causing the rotation of said lever, and means in connection with said part to be reciprocated adapted to engage said lever.

" 8. The combination with the part to be reciprocated and means for reciprocating said part throughout the greater portion of its movement, of a rotating member, a shaft secured eccentrically to and supported by said rotating member and

a pinion and an actuating member mounted on said shaft and constituting a lever, a nonrotative gear engaging with said pinion, and means carried by said part to be reciprocated for engaging with said actuating gear.

" 9. The combination with the part to be reciprocated and means for reciprocating said part throughout the greater portion of its movement, of a bodily revolving lever also rotating on an independent axis in the opposite direction of its bodily travel, an abutment in connection with said part to be reciprocated for engagement with said lever, and means for holding said lever in engagement with said abutment."

These nine claims are taken *verbatim* from a patent issued to the appellant Robert Miehle on May 25, 1897, on an application filed by him on September 3, 1896, and comprise nine of the twenty-one claims therein contained.

The appellee, George F. Read, had filed his application on December 7, 1895, nearly nine months before that of Miehle reached the Patent Office; but for some reason it was delayed in the Office, and Miehle's application was permitted to go to a patent before being put in interference with it. Notwithstanding, therefore, that Miehle has a patent, Read was the senior applicant, and entitled to all the advantages which his earlier application gives him. Read's specification included twelve claims, six of which were subsequently canceled. All these claims, besides other features differentiating them from the claims now in controversy, contemplated the use of a crank-pin as the thing to be reciprocated in the mechanism. Afterward, on September 15, 1897, upward of three months after the issue of the patent to Miehle, Read copied and added to his own specification and claims nine out of the twenty-one claims of that patent, which constitute the issue in this case, for the purpose of procuring the present interference, which was accordingly declared. Thereupon the parties filed their preliminary statements.

Read, in his statement, says that he conceived the invention on or about September 15, 1895, made drawings of it

and disclosed it to others about the same time, made no model of it, but caused a working printing-press embodying the invention to be commenced about October 10, 1895, completed during the month of November of 1895, and to be operated on or about December 2, 1895, and at various later dates. The invention was not put into commercial use. As already stated, he filed his application on December 7, 1895.

Miehle, in his preliminary statement, says that he conceived the invention in or about the month of April, 1895; that in the same month and during the following summer he made drawings of it and explained it to others; that in or about the month of May, 1896, he made a model of it, which he explained to others; but that he had not reduced his invention to practice otherwise than by the filing of his application (September 3, 1896).

When the cause came to a hearing after testimony taken, all three of the tribunals of the Patent Office concurred unanimously in holding that Miehle had shown by the evidence a conception of the invention by him as early as June, 1895; that he was, therefore, the first to conceive the invention, since Read claimed no earlier day than September 15, 1895, for the date of his conception; but that, as Miehle admitted that he had never reduced the invention to practice before the filing of his application, and as Read was the first to file his application, the latter was entitled to be regarded as the first to reduce to practice, and, therefore, as entitled to judgment of priority of invention, unless it appeared that, at the time of the filing of Read's application, Miehle was in the exercise of due diligence in the prosecution of his invention. They all found that Miehle was not diligent; and consequently they all awarded judgment of priority of invention in favor of Read.

From the decision of the Commissioner to this effect Miehle has now appealed to this court.

Assuming that the device of Miehle and the device of Read are the same in effect and in contemplation of the patent law, and that there is here interference in fact, we have no doubt that the decision of the Commissioner is en-

tirely correct. Due allowance is made to Miehle of priority of conception. It is considered, and we do not understand that it is contested by the appellee, that Miehle had a conception of the invention at least as early as June of 1895, which is upwards of three months earlier than the date claimed by Read for his own conception of it. But it does not appear that Miehle did anything whatever after that and before Read entered the field, conceived the invention, reduced it to practice, and filed his application in the Patent Office. Read was prompt and diligent enough in these steps; but there is an effort on the part of the appellant to show that he was not diligent in the prosecution of his application in the Office, and that he permitted it to lag unduly. It is not apparent, however, that this want of diligence, if such there was, on the part of Read, has any bearing on the present controversy. His rights, whatever they were, became fixed by the filing of his application; and they could not be lost and become vested in others by mere delay on his part in their prosecution.

But that there was delay on Miehle's part, which, under the circumstances, amounted to a want of due diligence, is quite apparent. After his disclosure of the invention in June of 1895, the record does not show that he took any steps whatever to reduce it to practice, either actual or constructive, until after the appellee had done everything that was required to perfect his title to the invention. The only excuse sought to be given for the delay is that he was engaged in other things which required his attention. But it appears that the requirement of due diligence in this case would have been subserved by a conference of less than two hours with his attorney. This was all the attention that appears to have been subsequently given to the matter before the filing of his application; and assuredly this amount of attention could have been given without difficulty, if it was desired to prosecute the matter earnestly, within the time between June and December of 1895. Miehle was not unacquainted with the requirements of the patent law in this regard, for he had taken out other patents; and he had not

the excuse that he was attempting to perfect his invention, or that he was without means to prosecute it.

We fully concur with the tribunals of the Patent Office in the conclusion reached by them in this regard.

But it is proper for us to say that we are not satisfied that the appellee Read is entitled to make the claims here in issue, in view of the decision of this court in the case of *Bechman* v. *Wood,* 15 App. D. C. 484. The several devices of the parties, as outlined in their original claims and specifications, do not seem to us to be the same. An essential feature of Read's device is the use of a crank-pin; while Miehle's device is conspicuous by the absence of any crank-pin or any need of one. It is true that, when Read sought to amend his application by taking Miehle's claims for the purpose of this interference, he expressly disclaimed the necessity of a crank-pin as an integral part of his device; but, all the same, it appears everywhere through the original specification, and the disclaimer is merely for the purpose of broadening the claims and taking in a form of the device of which he does not seem to have been aware before he saw the Miehle patent. We do not think that the two devices are one and the same in contemplation of law, or that they are mechanical equivalents of each other, merely because they both effect the same purpose of a reciprocating mechanical movement. We are not sure that either party is entitled to the broad claims of the present issue in view of the circumstances of the case. We do not desire to be understood as expressing any opinion on the subject. At the same time we do not desire to be understood as concurring in the opinion of the Patent Office that the original claims of the appellee Read are substantially the same as the claims of the present issue. But, as Miehle, although the junior applicant, has a patent for the devices in issue, it seems to be no more than just that Read should be placed on a position of equality with him, whereby they may both be better enabled to test in some appropriate proceeding the question of actual interference between themselves, if they so desire.

The decision of the Commissioner of Patents, awarding

judgment of priority of invention to the appellee Read, is *affirmed.*

*The clerk of the court will certify this opinion and the proceedings in this court to the Commissioner of Patents according to law.*